**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CASE NO. 1:17-CV-00140**

| | |
|---|---|
| CHRISTOPHER FULTZ, on behalf of himself and all others similarly situated,<br><br>**Plaintiffs**<br><br>vs.<br><br>CITIZENS BANK, N.A.,<br><br>**Defendant.** | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff, CHRISTOPHER FULTZ, individually and on behalf of himself, and all persons similarly situated, sues Defendant, CITIZENS BANK, N.A. ("CITIZENS"), and alleges as follows:

**INTRODUCTION**

1.  This is a civil action seeking monetary damages, restitution, and injunctive relief, against CITIZENS, arising from CITIZENS' routine practice of wrongfully assessing what CITIZENS calls a "Sustained Overdraft Fee."

2.  As alleged in detail below, this purported "fee," which initially was $6.99 and was raised to on March 7, 2016 $30.00, is assessed by CITIZENS against a customer's account in addition to an initial $39.00 overdraft fee, when the customer's account remains negative for a period of time. In reality, the assessment and collection of the Sustained Overdraft Fee from its customers constitutes interest for the use, forbearance, or detention of money. The amount of interest charged far exceeds the permissible limit under the laws of the state of Rhode Island and

is, therefore, usurious.

## PARTIES

3.	Plaintiff is a citizen and resident of the State of Ohio.  At all times relevant, Plaintiff maintained a bank account with CITIZENS and was provided banking services by CITIZENS in this District.  Plaintiff opened the bank account which is the subject of this lawsuit with Charter One Bank, N.A., which later changed its name to Citizens Bank, N.A.

4.	Defendant, CITIZENS, is a national bank with its headquarters and principal place of business located in Providence, Rhode Island.  CITIZENS is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Class, which includes the issuance of checks and debit cards for use by its customers in conjunction with their checking accounts.  CITIZENS operates branches, and thus conducts business, in this District.

## JURISDICTION AND VENUE

5.	This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, namely the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

6.	Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's and the Class's claims occurred in this District, including CITIZEN's operation of retailing banking branches and its provision of banking services involving the issuance of checks and debit cards to Plaintiff and members of the putative class.

## OVERVIEW

7.	The gist of the Sustained Overdraft Fee is as follows:  If a customer's account is

in overdraft status (i.e. has a negative balance) by some amount, CITIZENS charges an overdraft fee of $39.00 for each transaction that is paid while the balance remains negative.

8.      Thereafter, if the account remains negative for a specific period of time because the customer did not make a deposit to bring it positive, the customer will have to pay an additional fee – the Sustained Overdraft Fee – to CITIZENS.  Thereafter, if the account continues to remain negative, CITIZENS continues to charge additional Sustained Overdraft Fees.

9.      Unlike an initial overdraft fee, the Sustained Overdraft Fee is an additional charge to a customer for which CITIZENS has provided nothing new in the way of services.  The charge is based solely on the alleged indebtedness to CITIZENS remaining unpaid by the customer for a period of time.

10.     By way of background, overdraft fees have been a substantial source of revenue for banks for a number of years.  Overdraft fee revenues continue to proliferate.  As technology has rapidly grown and enabled bank customers new ways to access the money in their accounts, overdraft episodes and the attendant imposition of overdraft fees have skyrocketed.  Recent reports from the U.S. Consumer Financial Protection Bureau ("CFPB"), for example, show that a broad investigation has been launched regarding bank overdraft practices and procedures due to its concern that the growing cost of overdraft practices could place bank customers at unnecessary risk.  In 2012 alone, banks took in approximately $32 billion in overdraft-related fees.

11.     As a recent CFPB report reflects, "sustained negative balance" fees are becoming popular with banks and account for nearly 10% of total overdraft-related fees collected by banks that impose such charges.  According to the CFPB report issued in July 2014, negative balances

are likely cured by the customer within just a few days, rather than weeks. As such, the bank's extension of credit to its overdrawn customer is typically very short-term. Moreover, most negative balances created by an overdraft are not high figures. Nearly two-thirds of transactions that cause overdrafts were for $50.00 or less. As these statistics highlight, a bank's exposure for carrying a customer's overdraft is ordinarily very small and limited. But rather than charging legally permissible interest until its customer cures the overdraft balance, CITIZENS instead charges a Sustained Overdraft Fee that in reality is interest at an illegal rate.

### CITIZENS BANK'S PRACTICE

12. The specific issue in this case is CITIZENS's practice of deducting the Sustained Overdraft Fee from the accounts of its customers, including Plaintiff and others similarly situated.

13. Specifically, CITIZEN's current Sustained Overdraft Fee policy that went into effect on March 7, 2016, is as follows: if a customer fails to replenish his, her, or its account to bring the negative balance positive after 4 consecutive business days, on the 5th business day CITIZENS charges a Sustained Overdraft Fee of $30.00. Thereafter, if the account is not brought positive after 7 consecutive business days, CITIZENS charges another Sustained Overdraft Fee on the 8th business day, and then it charges a third Sustained Overdraft Fee on the 11th business day, if the account is not brought positive after 10 consecutive business days, with maximum Sustained Overdraft Fees of $90.00.

14. Prior to March 7, 2016, CITIZENS' Sustained Overdraft Fee policy was as follows: if a customer failed to replenish his, her, or its account to bring the negative balance positive after 3 or more consecutive business days, on Day 4 CITIZENS began to charge a Sustained Overdraft Fee of $6.99 per day, for each day the account remained overdrawn, with

maximum Sustained Overdraft Fees of $69.90.

15. The Sustained Overdraft Fees are all charged to the customer by CITIZENS for having extended credit for the various periods the account remained negative.

16. CITIZENS renders no additional service to its customers in exchange for charging this extra fee other than advancing the original money to a customer's account in an amount to cover the overdraft, for which CITIZENS previously charged the initial overdraft fee(s). CITIZENS uses the fact that it has loaned funds to its customer as a pretext to justify charging the customer multiple subsequent charges that exceed lawful limits, rendering the Sustained Overdraft Fee a usurious charge.

17. There is nothing in CITIZENS's written materials disclosing that this additional "fee" is in reality a charge of interest on extended credit.

18. In Plaintiff's case, as an example, his account statement for the date range June 16, 2016 through July l8, 2016, shows that it went into overdraft status on June 27, 2016, a $35.00 overdraft fee was assessed on June 28, 2016, and the account remained in that status until July 7, 2011.

19. Because the account remained negative, on July 1, 2016, CITIZENS charged Plaintiff a Sustained Overdraft Fee of $30.00.

20. Between June 27, 2016 and July 1, 2016, Plaintiff's negative account balance fluctuated between negative $11.25 and negative $51.25.

21. The Sustained Overdraft Fee identified in paragraph 19 above is an example of usurious charges made on Plaintiff's CITIZENS' account.

## CLASS ALLEGATIONS

22. Plaintiff brings this action on behalf of itself and all others similarly situated

pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

23. The proposed class is defined as:

All CITIZENS checking account holders in the United States who within the applicable statute of limitations period prior to the date of filing this Complaint, through the date of class certification, who were assessed one or more Sustained Overdraft Fees ("the Class").

24. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

25. Excluded from the Class are CITIZENS, its parents, subsidiaries, affiliates, officers and directors, any entity in which CITIZENS has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

26. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only through CITIZENS's records.

27. The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, was charged Sustained Overdraft Fees by CITIZENS. The representative Plaintiff, like all Class members, has been damaged by CITIZENS' misconduct in that it has been assessed usurious Sustained Overdraft Fees. Furthermore, the factual basis of CITIZENS' misconduct is common to all Class members, and represents a common thread of unfair conduct resulting in injury to all members of the Class.

28. There are numerous questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual Class members.

29.     Among the questions of law and fact common to the Class are whether CITIZENS:

a.      Charged interest to its customers under the guise of a Sustained Overdraft Fee in amounts that violate applicable usury laws;

b.      Developed and engaged in an unlawful practice that mischaracterized or concealed the true usurious nature of the Sustained Overdraft Fee;

c.      Charged its customer a Sustained Overdraft Fee that bears no relationship to the actual costs and risks of covering insufficient funds transactions, and is instead based on the amount of time credit has been extended when the account is in a negative balance condition; and

d.      Plaintiff and other members of the Class have sustained damages as a result of the assessment and collection of the Sustained Overdraft Fees, and the proper measure of damages.

30.     Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices of CITIZENS' checking account agreements.  Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

31.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is

small relative to the complexity of the litigation, and due to the financial resources of CITIZENS, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and CITIZENS' conduct will proceed without remedy.

33. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

34. CITIZENS has acted or refused to act on grounds generally applicable to Plaintiff and other members of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief, as described below, with respect to the Classes as a whole.

### FIRST CLAIM FOR RELIEF
### VIOLATION OF NATIONAL BANK ACT (12 U.S.C. §§ 85, 86)

35. Plaintiff re-alleges paragraphs 1 through 34, as if fully set forth herein.

36. Interest, by definition, is compensation for the use or forbearance of money or as damages for its detention, typically measured by time, which is exactly the case with CITIZENS' Sustained Overdraft Fee. Any such charges imposed on a customer for use or forbearance of money or as damages for its detention – no matter how labelled by CITIZENS – are in fact interest and in this case usurious, as alleged below.

37. Claims for usury against a national bank such as CITIZENS are governed exclusively by certain provisions in the National Bank Act – specifically, 12 U.S.C. §§ 85, 86. Under § 85, a national bank may charge interest on any loan or debt at the *greater* of two options. Option (1) is "the rate allowed by the laws of the State ... where the bank is located." Option (2) is "1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located."

38. The law provides that a bank is located only in the state that is designated on its organization certificate. CITIZENS is deemed to be located in Rhode Island because it designates Rhode Island as its location in its organization certificate.

39. Under Rhode Island law, the maximum allowable interest rate is 21%. *R.I. Gen. Laws §6-26-2(a). C*onsequently 21% is the maximum rate that CITIZENS could have charged.

40. By assessing and collecting Sustained Fee for Overdrawn Accounts, CITIZENS has knowingly extended credit to Plaintiff and others similarly situated for use in their checking and/or money market accounts. Such extensions of credit are loans made without a specific loan agreement. In fact, 12 U.S.C. § 84 defines the term "loans and extensions of credit" as including any and all direct or indirect advances of funds to a person made on the basis of any obligation of that person to repay the funds. In addition, federal banking regulators in guidance issued to national banks on the subject of overdraft items have expressly stated: "When overdrafts are paid, credit is extended." *See* Joint Guidance on Overdraft Protection Programs, 70 Fed. Reg. 9127, 9129 (Feb. 24, 2005).

41. Although CITIZENS is only permitted to charge Plaintiff and others similarly situated a *maximum* of 21.0% annualized interest on these loans and extensions of credit,

CITIZENS has knowingly charged and collected Sustained Fee for Overdrawn Accounts from Plaintiff and others similarly situated that far exceeded this permissible rate.

42. Using the maximum amount of Plaintiff's negative balance during the relevant period ($51.25), and applying a 21.0% annualized interest rate over the 14-day period, the maximum amount that CITIZENS was legally permitted to charge Plaintiff was $0.41. In this case, CITIZENS charged $30.00, which was over 73 times the maximum legal rate.

43. The Sustained Overdraft Fees charged to Plaintiff and others similarly situated for such advances of money are egregiously high, usurious, and illegal.

44. By labeling its charge a Sustained Overdraft Fee, CITIZENS cannot mask the true nature of the charge, especially since it overtly identifies in its disclosures that the fee is tied to the time that the account is in a negative balance condition.

45. Plaintiff and those similarly situated have sustained damages based on CITIZENS' violation of the NBA through its assessment and collection of the Sustained Overdraft Fee.

46. The usurious transactions at issue all occurred within 2 years prior to the commencement date of this action.

47. Plaintiff and those similarly situated are entitled to recover twice the amount of the usurious interest they paid under 12 U.S.C. § 86, which provides: In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, *twice the amount of interest thus paid from the association taking or receiving the same* . . . (Emphasis added).

48. Plaintiff and those similarly situated hereby demand recovery of the amounts owed to them as a result of the violations asserted herein.

WHEREFORE, Plaintiff demands judgment against defendant CITIZENS for himself and the Class as follows:

(a) Certifying this matter as a class action pursuant to Fed. R. Civ. P. 23;

(b) Designating Plaintiff as an appropriate Class representative;

(c) Awarding Plaintiff and the Class damages (including twice the amount of the usurious interest paid), prejudgment interest from the date of loss, and their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs; and

(d) Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues so triable as a matter of right.

Dated: March __, 2017

*/s/ Anthony R. Leone*
**LEONE LAW LLC**
ANTHONY R. LEONE
Rhode Island Bar No. 6099
aleone@leonelawllc.com
1345 Jefferson Boulevard
Warwick, Rhode Island 02886
Telephone: 401-921-6684
Facsimile: 401-921-6686

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
JEFF M. OSTROW
ostrow@kolawyers.com
JONATHAN M. STREISFELD
streisfeld@kolawyers.com
One West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300

*Pro Hac Vice Motion to be Filed*

**TYCKO & ZAVAREEI LLP**
JEFFREY D. KALIEL
jkaliel@tzlegal.com
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*Pro Hac Vice Motion to be Filed*